May it please the Court, my name is Wayne Young. I represent Mr. Alvera, who is the 2254 petitioner and appellant here. This is the case in which Alvera filed a mixed petition and then subsequently requested that the Court impose what has since become, come to be known as the stay and obey process. And the Court declined the motion. So the issue on appeal seems to me is whether that was properly within the Court's discretion to decline his request for the stay and obey, because this Court subsequently, and Kelly, and Ford, and Brambles has affirmed that stay and obey procedure. And my colleague's argument, as I understand it, is that the Court had discretion and exercised it. And our argument is that that discretion is extremely limited now. The decision in Ford talked about that failure to give a mixed petitioner the stay and obey procedure would constitute error, and that the discretion is more a form, matter of form than it is of substance. So there is really no basis to distinguish this case from Kelly or Ford or Brambles. Petitioner made the request. It was denied. And then subsequently had his petition dismissed all along trying to preserve the right to have the stay and obey. The only ground at all that is arguably distinguishable is that I think Kelly and the other ones, the time had already expired. The one-year statute of limitations had already expired. So by going back to the State Court by then, you're already out of time to come back after it's expired, but was likely to expire, does the same rule apply? And the cases seem to say that it's either impossible to go back to court, State court and return, or unlikely. And the timeline in this case is such that by the time the district court denied him the stay and obey process, his time had almost run. There was maybe six weeks left. Of course, the mastery judge has based the decision in part upon the fact that on March 29th, 2001, O'Leary knew what the situation was because that had been raised and it was in the answer, the government's answers. They really had from March 29th. I don't agree with that, Your Honor. And the reason is that was the government's position. It was the Attorney General's position. As it turns out, it's right. But when you have – I'm not sure that that's the last word, if opposing counsel, in effect, tells you that it's a mixed petition, you're out of luck. Maybe it is, maybe it isn't. So really the operative time becomes when the judge tells you that. Now, certainly the better – So I actually have a problem. I'm not sure which way it cuts in your argument, but I think everybody's been calculating the time incorrectly. I think there was actually 103 days left if you apply Bunney to the last decision as a State Court of Appeal, which would have been – let's see. The last decision was the Supreme Court decision, which was rendered November 29, 2001. I think the clock would have started December 30, 2000. So if you calculate from there, he actually had 103 days remaining, not 41, which both on – but does it affect your argument? I mean, is 103 days enough time for a State pro se prisoner to go back up and down with his unexhausted claims? If the judge had said, all right, if to give him any advice, it had been established that there were 103 days, that's plenty of time. The rule that's emerged is 30 days to go back to State court and 30 days after the State court decides it to come back to federal court. I think, Kelly, that was the time frame. You know, there's two things about the timeline. It shows you how difficult it is to calculate it for experienced counsel, and then you're asking a pro se petitioner with no legal training to do the same thing. But Ms. Cutler, in her brief, calculates the expiration date as October 30th. And there's two ways it can go either way. Because, as the Court pointed out, the Supreme Court's denial, that would add some time to that. But there's also another factor about when that was filed that would subtract. But, I mean, does that take into account the one full round that the State petitioners get now under some of our other AEDPA cases? I'm not sure. Yeah, that's what I'm thinking, is that we've had a flurry of recent cases talking about, like, you actually count what you actually don't count. So … And what's interesting is the petitioner believed that the expiration date was September the 14th. So if the Court agrees that the Attorney General giving you their opinion as mixed isn't the trigger date, what we have is that the Court finally, on September the 14th of 2001, issued its opinion saying there's no exceptional circumstances I'm exercising my discretion. I'm declining the stay-in-the-bay procedure. That was right at the time that Mr. Olvera happened to think. And that's on page 159 of the E.R. So he, at least, was under the impression that time was running out. The Court didn't tell him anything other than there may be timeliness problems if you take the second choice and go back to State court, but doesn't give him any guidance. So again, maybe he had some time, but what he did, rather than take the Court's advice and go back, he wanted to challenge that decision, and that's why we're here today. So he filed subsequent objections. And so he filed in a timely fashion his procedures within the district court and then to this court that the district court was wrong in that decision. And by that time, it's clear by any calculation the time has expired. If he had filed with the State court on September the 14th, would the time that the California court was taking to decide that, would that have been additional tolling? Once he went to State court, yes. Assuming that time hadn't expired, that would be additional tolling. Which nobody said it had expired at that stage. On September the 14th, no, although the petitioner thought it did, but the date, the common ground they're working off of is this October 30th date. So that would have tolled it again. So obviously, the best thing for him to do is go back to State court while there's still some time, but he's pro se, proceeding without advice of counsel. This is very complicated stuff. And he chose to keep fighting, thinking that the court got it wrong in three panels of this court, subsequently held that the district court did have it wrong in that there's really very limited discretion to deny a petition or to stay and obey procedure. But had he taken Ms. Cutler's advice back in March and gone back to State court, there was plenty of time. And with that, I'll submit it. Thank you, counsel. May it please the Court. Maxine P. Cutler, Deputy Attorney General, appearing on behalf of the Respondent of Pauley. This is a situation where it was Petitioner's conduct which caused him the timeliness difficulties. As noted by this Court, as of September 14th, he did have approximately 46 days remaining. Had he filed in State court at that point, he would have tolled the statute of limitations, and then he would have been able to come back. The district court gave the Petitioner every possible chance to file. They kept they did not actually deny the petition until April 25th. So they, in a sense, did stay the petition for another five or six months. The district court, I believe, mentioned in its September 14th minute order that Petitioner should be and possibly could be pursuing its State court remedies. Actually, isn't that another problem? Because while it was sitting around in feral court, the statute of limitations under AEDPA isn't being tolled. That's true. It didn't. So that's not really giving him anything, unless they're letting him know that, hey, while it's sitting here under Duncombe v. Walker, your unexhausted claims are the statute of limitations under AEDPA is about to toll those. What the district court did do, I believe it was in the footnote, was tell the Petitioner that one of his unexhausted claims did not raise a Federal issue, the prior strike. And the other unexhausted claim, the sufficiency of the evidence claim, the State court properly applied well-established Federal law and told him again that he should elect whether to withdraw his unexhausted claims or withdraw the petition. I believe at that point the State court, the Federal court was not sure whether he was pursuing the State court remedies. To deny his Federal claims, which they can do under AEDPA, they can deny unexhausted claims, without knowing whether he was pursuing his State court remedy would put the district court in a little bit of an awkward situation because he may have been pursuing his State court remedies at that point. But the district court, in its generosity, gave Alvera every opportunity to withdraw the unexhausted claims. And by that footnote, it was even basically informing him that he would — that he does not have a meritorious Federal claim in the unexhausted claims. Alvera was aware when he essentially conceded that he did have unexhausted claims, he knew they were unexhausted. He filed in State court on the ineffective assistance of counsel claim. He could have avoided piecemeal filing by attaching his other two claims at that time, and then he would have not been in the situation he is now. As early as his appellate counsel writing him the letter saying the California Supreme Court has been rejecting these claims, so I'm sorry, but we're not going to petition for review, said if you have unexhausted claims, you must exhaust them prior to raising them in Federal court. So this Petitioner, this is not a situation, as in Ford or Kelly, where the individual was not aware that they had unexhausted claims, the petition was denied, and the statute had run. Here, the Petitioner was very aware he had unexhausted claims, knew how to file in State court, had in fact filed in State court on one of his issues, preferred to argue the obey and stay procedure as in — and did not follow the Court's direction in choosing one or the other of the options that he was given. So it was his own conduct that caused his timeliness difficulties. This was not unforeseen circumstance outside of his control that would be the subject of equitable tolling as it was in Ford or Kelly. This is a different situation factually. Kennedy. Is it appropriate to consider at all the likelihood of success on the unexhausted claims? I believe it is, and it's also — it is — it also, I believe, would be appropriate to consider the likelihood of his exhaustive claim, which was the ineffective assistance of counsel claim. Because a quick reading of the record will show that he's not being denied a chance to have a meritorious claim reviewed in Federal court, because the ineffective assistance of counsel claim was based on a failure to petition for California State court review. But that was based on the claims of the district courts exercising its discretion not to strike one of his priors, which the district court here said is not a Federal question because it deals with State law. And also the insufficiency of the evidence claim, which is the evidence in this case, if you look at the facts, he was found in a home not his own. Personal property was strewn all about the home. He was hiding under a blanket. Yeah, but he was — if he really were going to be a burglar, would he be in there hiding under a blanket? He thought the police would overlook him and leave. The question is whether it was sufficient evidence. That's what we have determined otherwise. Wouldn't he, if he wanted to burglarize the place, wouldn't he gather up what he wanted and leave, not stay in there under a blanket? One would think that perhaps he didn't have time to leave because he was gathering up evidence. The front door was jammed because property was barring it from being opened. Drawers were — the materials of drawers were strewn around. So he might not have gotten himself organized. But the trier of fact could have found that he was drunk and didn't know where he was, but they didn't. And there was certainly sufficient evidence in the record to support the trier of fact's finding. So that isn't — a quick read of the record would show that he wouldn't prevail on any ineffective assistance of counsel claim there. So he's not being denied a meritorious claim. I believe in Kelly, the district court felt that five out of nine claims were unexhausted, when this Court felt only really one or maybe two were unexhausted. So it presented a more meritorious situation. So this Petitioner, due to his own lack of diligence, his apparent intended piecemeal filing in State court, which is better to do all of his petitions once, and also the fact that a quick reading of the record shows he does not have a meritorious claim in Federal court, so he's not really being denied a Federal review in a situation where there's hope of his prevailing, sets this aside from the Petitioners in Kelly and Ford. With that, I'll submit. Thank you, counsel. You had a couple minutes left in your argument. Assuming that October 30th is the correct date for the expiration of the statute of limitations, on May the 30th, Petitioner filed a traverse in which he essentially moved to dismiss, and there was no response to that. And the case just lay, as Judge Wardlaw pointed out, from then until September when Petitioner renewed it by filing a specific motion to stay and obey. So there were 90 days there. Time is running in which the Court doesn't respond to his motion to dismiss. Now, again, he's not represented by counsel, and it's not a specific motion, but if you read, you see it in the excerpts, he did request that the case be dismissed. Had that happened, he would have had plenty of time. And there is something to the IAC claim in this case, and it's this. His state court appellate lawyer simply wrote him a letter and said, I'm not going to file a petition for review. Forget about the petition for re-hearing in the state supreme court. That's different than the procedure that's required in Anders in which you either have to file it if requested or withdraw. So there's a procedure in federal court that prevents happening what happened here, which is the petitioner wants a petition for review, and counsel essentially just abandons him. So the question becomes, as a matter of Sixth Amendment law, considering the implications for a petitioner if you don't exhaust by filing a petition for review, should a similar-like procedure, an Anders procedure, be imposed on state courts? Complicated issue in the public. Kennedy, that the Supreme Court has decided that, haven't they, unfortunately? They decided the Wendy brief process was okay, and that that very argument was made. In fact, it was a Nisorker case that said that the Wendy procedure that California follows does not follow Anders. The Supreme Court said, yep, that's okay. And I don't know the answer to this, Judge, but maybe that was prior to AEDPA. And by only having the one year and only having one shot in federal court, well, then. I know, because I wrote the C. And I circuit-gazed when I did that. Well, then that certainly presents a dilemma, then, for federal habeas petitioners. If their counsel abandons them and they don't have exhaustion. And then the last point is, simply asking pro se petitioners to do this without assistance of counsel, it creates so many problems. And we don't have procedures in effect yet on which cases deserve it and don't. But that certainly should give the benefit of the doubt to someone proceeding without counsel. I just have one quick question. Have the state claims now been exhausted? If we were to remand this case, what would the procedural posture be? The sufficiency of the evidence claim has been exhausted because he subsequently went back to the Supreme Court and raised that. I don't believe that he has ever exhausted the three strikes issue, which may now have been obviated by Lockyer and Andrade case. Is there a better question there now, perhaps? All right. Thank you. Thank you, counsel. Olvera v. Garbino will be submitted. And we'll take up Tucker v. Kenner.
judges: Hug, B. Fletcher, Wardlaw